IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JESSIE BENTON, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 4:21-CV-00432-BCW |
| UMB BANK, N.A., | ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Plaintiffs' Motion to Remand. (Doc. #13). The Court, being duly advised of the premises, having heard oral argument on the motion on August 19, 2021, grants said motion.

## BACKGROUND

Plaintiffs are beneficiaries of the Thomas Hart Benton testamentary trust and the Rita P. Benton testamentary trust ("Benton Trusts"). Thomas Hart Benton died on January 19, 1975. His Last Will and Testamentary Trust were admitted in the Probate Court of Jackson County, Missouri on March 11, 1975. Rita P. Benton died on April 9, 1975. Her Last Will and Testamentary Trust were admitted in the Probate Court of Jackson County, Missouri on June 11, 1975.

The Benton Trusts designated Defendant UMB Bank, N.A. as executor and trustee. On May 31, 1979, the property of the Thomas Hart Benton Trust transferred to UMB as trustee. On June 22, 1979, the property of the Rita P. Benton Trust transferred to UMB as trustee. UMB has thus served as trustee for the Benton Trusts since May 31, 1979 and June 22, 1979.

As trustee, UMB took possession of the Benton Trusts' assets, including "stocks, cash, real estate, and other assets," "hundreds of paintings, drawings, and lithographs by Benton and other

1

prominent artists," "correspondence between Benton and President Harry S Truman, the original manuscripts of the articles and books written by Benton, and other intangible assets, such as copyrights." (Doc. #1-4 at 15).

As set forth in the petition, under the terms of the Benton Trusts, "UMB was to hold, manage, invest, and reinvest the property of the Benton Trusts and distribute the net income and principle in accordance with the trusts' terms." (Doc. #1-4 at 15). With respect to Thomas Hart Benton works of art, the trust documents provided that the trustee would "handle [the works] in such a way as to maintain the market value and demand for them . . . ." (Doc. #1-4 at 16).

On December 17, 2019, Plaintiffs filed six civil claims against UMB in the Circuit Court of Jackson County, Missouri, Probate Division, seeking relief for UMB's mismanagement of, and breaches of duty with respect to, the Benton Trusts' property. Only Plaintiffs' Count II, III, and IV remain in dispute. (Doc. #14 at 6).

In Count II for breach of trust, Plaintiffs allege UMB violated Mo. Rev. Stat. § 456.8-801 (trustee to administer the trust in good faith and in the beneficiaries' interests consistent with §§ 456.1-101 to 456.11-1106), § 456.8-802 (trustee's duty of loyalty to act in beneficiaries' best interest avoiding conflicts of interests or self-dealing); § 456.8-804 (trustee to administer the trust as a prudent person exercising reasonable care); § 456.8-806 (trustee with special skills or expertise, or who is named as trustee in reliance on representation of special skills or expertise, is required to use the special skills or expertise); § 456.8-809 (trustee required to take reasonable steps to take control of and protect trust property); and § 456.8-810 (trustee required to keep adequate administration records). These alleged violations of law rely on a variety of overlapping factual predicates, including UMB's alleged failures to (a) provide the beneficiaries with a complete and accurate annual accounting of trust property, (b) keep an accurate inventory of trust

property; (c) maintain knowledge of the location of trust property; (d) obtain valid artwork appraisals; (e) take steps to maximize profits and fair market value in connection with the sale of trust artwork; (f) avoid relying on property belonging to the Benton Trusts in UMB's self-promotion efforts; (g) maximize trust revenue through promoting, copyrighting and/or licensing artwork or otherwise protect the intellectual property interests of the Benton Trusts; and (h) prudently invest the assets of the Benton Trusts.

In connection with Count II, Plaintiffs request judgment against UMB in an amount necessary to redress UMB's breaches of statutory and fiduciary duties as trustee. Plaintiffs seek an amount in excess of one million dollars equal to the greater of (i) the amount necessary to restore the value of the Benton Trusts and distributions therefrom to what they would have been without UMB's breaches and/or violations; or (ii) the profit UMB made through the breaches and/or violations. Plaintiffs also request that UMB restore to the trusts any trust property within UMB's possession or control, that UMB be liable for fees and expenses incurred, punitive damages, any other relief deemed just and proper.

In Count III, Plaintiffs seek to void any transactions entered into by UMB that involved self-dealing, alleging these self-dealing transactions violated the trustee's duty of loyalty under Mo. Rev. Stat. § 456.8-802. Plaintiffs allege UMB invested and managed the property of the Benton Trusts in a manner which accrued to the benefit of UMB while operating to the detriment Plaintiffs. Plaintiffs request a judgment voiding all sales and transactions involving property of the Benton Trusts for which there was a conflict between the interests of UMB and Plaintiffs and for which UMB had no authorization, approval, or consent. Further, Plaintiffs seek a declaration that they are the legal and lawful owner of all such property, any property in UMB's possession as a

result of these unauthorized transactions should be returned to the Benton Trusts, and any other proper relief.

In Count IV, Plaintiffs allege UMB violated Missouri's common law Prudent Man Rule and the Missouri Prudent Investor Act, Mo. Rev. Stat. §§ 469.900-469.913. Under the Prudent Man Rule, a trustee making investments on behalf of a trust is under a duty to the beneficiary, "to make such investments and only such investments as a prudent man would make of his own property having primarily in view the preservation of the estate and the amount and regularity of the income to be derived," unless the trust documents or a statute provide otherwise. (Doc. #1-4 at 42) (citing O'Riley v. U.S. Bank, N.A., 412 S.W.3d 400, 413 (Mo. Ct. App. 2013)).

Under the Prudent Investor Act, "a trustee who invests and manages trust assets owes a duty to the beneficiaries of the trust to comply with the prudent investor rule set forth in this act." Mo. Rev. Stat. § 469.901.1. "A trustee shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." Mo. Rev. Stat. § 469.902.1. Additionally, "[a] trustee shall invest and manage the trust assets solely in the interest of the beneficiaries." Mo. Rev. Stat. § 469.905. Plaintiffs allege UMB failed to properly discharge these obligations are trustee, specifically by failing to provide adequate and complete annual accountings reflecting all investments made by UMB, and further, "UMB's sale and use of assets of the Benton Trusts, including the method and timing of the sales of the artwork owned by the Benton Trusts, were not prudent investing activities, not made in good faith, not solely in the interests of the beneficiaries," and have resulted in substantial loss.

In connection with Count IV, Plaintiffs request judgment against UMB in an amount equal to the value of the Benton Trusts had UMB invested prudently, in good faith, and solely in the

interests of the beneficiaries from 1975 to present, and the value of the Benton Trusts in light of UMB's investments actually made during that time period, in an amount in excess of one million dollars. Plaintiffs otherwise seek fees and expenses, punitive damages, and any other proper relief.

Pursuant to the scheduling order issued by the state court probate division in preparation for the trial scheduled in January 2022, the parties exchanged discovery. On July 29, 2020, Plaintiffs served on UMB their Fourth Interrogatories, which asked about UMB's handling of copyrights owned by the Benton trusts. On September 18, 2020, UMB responded

> UMB, as Trustee, maintains that, aside from a short list of exclusions of rights gifted by the artist during his lifetime, the Benton Trust holds the copyright on all Thomas Hart Benton artwork whether owned by the Trust or some other third party. The formal registration of the works with the U.S. Copyright Office has not been pursued by the Trustees and the Benton Trust because it is not required to license, monetize, or protect the copyright interests in the artwork.

(Doc. #14-3 at 3).[1]

On April 30, 2021, Plaintiffs designated their expert witnesses. Plaintiffs designated retained expert Weston Anson to offer opinions on "maximizing revenue from copyright licensing of Benton artwork, including but not limited to the revenue which could have been obtained from copyright licensing of Benton artwork if it had been properly managed." (Doc. #14-4 at 1). Plaintiffs also designated retained expert John Pelosi to offer opinions on "UMB's management

---

[1] On June 26, 2021, UMB amended this response to

> UMB, as Trustee, maintains that, pursuant to this February 25, 1975 Last Will and Testament, Thomas Hart Benton attempted to convey to the Trust copyrights in his work through the residual clause. Any copyrights still owned by Thomas Hart Benton at the time of his death (barring, for instance, those that had been previously dedicated to the public or transferred by Mr. Benton or a prior owner of the copyrights), would be owned by the Trust, provided that (1) they have not expired under the applicable statutory provisions, and/or (2) the rights in renewal and in the copyrights themselves have not been transferred by statute, for example as set forth in 17 U.S.C. § 304. UMB has not undertaken a specific analysis of each piece of Benton artwork to determine whether any copyright associated with a particular piece was conveyed to the Trust or has otherwise been dedicated to the public by Mr. Benton or a third party.

(Doc. #14-5 at 2).

of copyrights and licenses for the Benton artwork; and the custom and practice for protecting intellectual property rights for artwork." (Doc. #14-4 at 6).

On June 2, 2021, Plaintiffs provided Pelosi's report to UMB (Doc. #19-4), and on June 14, 2021, provided Anson's report (Doc. #19-5). Also in June 2021, Plaintiffs provided to UMB the expert report of Max Schanzenbach, who relied on the opinions of Pelosi and Anson to create a damages model. The model provides for "$220 million for 'failure to license artwork,' $95 million for 'failure to sell prints and lithographs,' $38 million for 'undersold paintings . . . ,' and '$9 million for 'mismanagement of actual liquid portfolio.'" (Doc. #19-6).

On June 19, 2021, UMB filed a notice of removal, pursuant to 28 U.S.C. §§ 1441, 1446, and 1454, removing Plaintiffs' claims to this Court under 28 U.S.C. § 1331 (district courts' original jurisdiction of all civil actions arising under federal law) and § 1338 (district courts' original jurisdiction of any civil action "arising under any Act of Congress relating to . . . copyrights . . . ."). (Doc. #1).

UMB argues Plaintiffs' expert reports, provided in June 2021, are "other paper[s]" from which it was first ascertainable that Plaintiffs' claims arise under the Copyright Act, 17 U.S.C. § 101, et seq., such that the June 19, 2021 removal is timely. (Doc. #1); 28 U.S.C. § 1446(b)(3) ("a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an . . . other paper from which it may be first ascertained that the case is one which is or has become removable."

In addition, UMB asserts removal is timely under § 1454(b)(2), which provides for extension of the 30-day removal time limit of § 1446(b)(3) for "cause shown" in cases that "aris[e] under any Act of Congress relating to . . . copyrights." 28 U.S.C. § 1454(a).

On June 26, 2021, Plaintiffs filed the instant motion to remand. (Doc. #14). First, Plaintiffs argue remand is required because the removal was not timely under § 1446(b)(3) or under § 1454(b)(2) for "cause shown." Second, Plaintiffs argue remand is required because Plaintiffs' claims do not arise under federal law, and are thus not removable under § 1331, § 1338, or § 1454(a). Finally, Plaintiffs seek attorneys' fees and costs associated with the motion to remand under § 1447(c),

## LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" Gunn v. Minton, 568 U.S. 251, 256 (2013) (quoting Kokkonen v. Guardian Life Ins. of Am., 511 U.S. 375, 377 (1994)). "A federal district court may exercise removal jurisdiction only where the court would have had original jurisdiction had the action initially been filed there." Campbell v. Anytime Labor-Kansas, LLC, No. 16-00142-CV-GAF, 2016 WL 2743541, *3 (W.D. Mo. May 11, 2016) (citing Krispin v. May Dep't Stores, Co., 218 F.3d 919, 922 (8th Cir. 2000).

The removing party bears the burden to demonstrate the existence of federal subject matter jurisdiction by a preponderance of evidence. Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009); Altimore v. Mount Mercy Coll., 420 F.3d 763, 768 (8th Cir. 2005). The removing party also must satisfy the procedural requirements for removal, including compliance with the time limit for removal in 28 U.S.C. § 1446(b) (notice of removal should generally be filed within 30 days of defendant's receipt of the pleading setting forth the basis for federal jurisdiction).

A party may seek remand to state court if the district court to which the case was removed lacks jurisdiction or if there is some defect in the removal procedure. 28 U.S.C. § 1447(c). Removal

statutes are strictly construed. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941). Any doubt relating to the existence of federal jurisdiction is properly resolved in favor of remand. Baker v. Martin Marietta Materials, Inc., 745 F.3d 919, 923 (8th Cir. 2014).

## ANALYSIS

In the motion before the Court, Plaintiffs argue the Court must remand its claims to state court for two reasons. First, Plaintiffs argue UMB's notice of removal was not timely filed. Second, Plaintiffs argue their claims are not removable because they do not arise under federal law. (Docs. #14 & #27).

In opposition to remand, UMB argues its June 19, 2021 removal was timely under § 1446(b)(3) (removed within 30 days of ascertainment of federal jurisdiction) and/or § 1454(b)(2) (removed relating to copyright with "cause shown" to extend the § 1446(b) removal deadline). UMB otherwise argues Plaintiffs' claims are removable as "arising under" federal law because Plaintiffs claims either (1) require construction of the Copyright Act; (2) are completely preempted by the Copyright Act; or (3) implicate significant federal issues. (Doc. #19-1).[2]

**A. Removal was not timely.**

Plaintiffs argue the Court should remand their claims to state court because UMB's June 19, 2021 notice of removal was not timely filed. (Doc. #14, #27). In opposition, UMB argues it removed Plaintiffs' claims within 30 days of its receipt of Plaintiffs' expert reports, which provided the first opportunity from which UMB could ascertain that Plaintiffs' claims were removable, such that the removal was timely under §1446(b)(3). UMB additionally argues it has "cause shown" to extend § 1446(b)(3)'s 30-day time limit for removal through § 1454(b)(2), which is applicable to claims arising under the Copyright Act. (Doc. #19-1); 28 U.S.C. § 1454(a).

---

[2] UMB provided unredacted versions of their suggestions and exhibits in opposition to the motion to remand, which the Court reviewed in camera. (Doc. #19-1, et al.).

### 1. Removal is not timely under § 1446(b)(3).

UMB argues the June 19, 2021 notice of removal (Doc. #1) is timely under § 1446(b)(3) because UMB removed Plaintiffs' claims to federal court within 30 days of its receipt of Plaintiffs' expert reports. UMB asserts the expert reports are "other paper" under § 1446(b)(3), and UMB could not have ascertained that Plaintiffs' claims were removable before it received Plaintiffs' expert reports in June 2021. (Doc. #19-1) (citing Gibson v. Clean Harbors Env't Servs., Inc., 840 F.3d 515, 518 (8th Cir. 2016)).

In opposition, Plaintiffs dispute the expert reports of Pelosi and Anson provided the first opportunity from which UMB might have been able to ascertain that Plaintiffs' claims involved copyright. (Doc. #14 at 10). Plaintiffs argue the nature of their claims against UMB was ascertainable from the petition, which was provided to UMB in December 2019. Thus, Plaintiffs argue, timely removal under § 1446(b)(3) would have occurred no later than January 2020. Further, Plaintiffs argue if the petition did not provide the first opportunity from which it could be ascertained that Plaintiffs' claims involved copyright, UMB responded to interrogatories implicating copyright in September 2020, thus undermining any argument that UMB was unaware that Plaintiffs' claims were removable until June 2021.

To remove a civil action to federal court, a defendant files a notice of removal stating the basis for the removal, along with a copy of all processes, pleadings, and orders. 28 U.S.C. § 1446(a). The notice of removal "shall be filed within 30 days after" defendant's receipt of the initial pleading, but "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

"[T]he Court must determine at what point defendants could have intelligently ascertained that the action was removable." Allen v. Bayer Healthcare Pharms., Inc., No. 4:14-CV-420 (CEJ), 2014 WL 1613949, *2 (E.D. Mo. Apr. 22, 2014) (citing Bachman v. A.G. Edwards, 2009 WL 2182345, *3 (E.D. Mo. July 22, 2009)).

Though Plaintiffs' expert reports provided UMB with more detailed information about the type and source of damages sought by Plaintiffs, the record suggests UMB had "clues" that Plaintiffs' claims related to the Copyright Act before June 2021. Johnson v. Lou Fusz Auto. Network, Inc., No. 4:14CV1820 JCH, 2014 WL 7338820, *3 (E.D. Mo. Dec. 22, 2014) (collecting cases). A plain reading of the Plaintiffs' petition suggests as much. But, even if the petition's multiple references to copyright was not an adequate basis from which UMB might have ascertained that Plaintiffs' claims may involve some application of federal law, UMB should have reasonably ascertained Plaintiffs' claims were potentially removable when it responded to Plaintiffs' fourth interrogatories about UMB's handling of copyrights owned by the Benton trusts in September 2020. Therefore, timely removal under § 1446(b)(3) would have occurred no later than October 2020, UMB's June 19, 2021 removal was not timely, and the motion to remand may be granted on this basis alone. McHugh v. Physicians Health Plan of Greater St. Louis, Inc., 953 F. Supp. 296, 299 (E.D. Mo. 1997) (§ 1446(b) time limit is not jurisdictional but is mandatory, and timely motion to remand for failure to meet the 30-day limit is properly granted).

**2. Removal is not timely under § 1454(b)(2).**

UMB also argues, notwithstanding § 1446(b)(3)'s time limit, because Plaintiffs' claims arise under the Copyright Act, the Court can extend the 30-day removal time limit for "cause shown." 28 U.S.C. § 1454(b)(2).

> A civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights may be removed

to the district court of the United States for the district and division embracing the place where the action is pending.

28 U.S.C. § 1454(a). Removal under § 1454(a) for cases arising under "any Act of Congress relating to . . . copyrights" "shall be made in accordance with section 1446, except that if the removal is based solely on this section – (1) the action may be removed by any party; and (2) the time limitations contained in section 1446(b) may be extended at any time for cause shown." 28 U.S.C. § 1454(b)(1)-(2).

The Eighth Circuit has not determined what is "cause shown" under § 1454(b)(2). Other district courts to have considered the issue have interpreted the standard as akin to "good cause" under Fed. R. Civ. P. 6(b), or to require something more than "oversight, inadvertence, or excusable neglect," or to require the removing party to demonstrate it was somehow prevented from removing the action sooner, or to require the removing party to show that the reason for the delay was "reasonable, justified, and would not result in prejudice to any party." Andrews v. Daughtry, 994 F. Supp. 2d 728, 734 (M.D.N.C. 2014); Univ. of Ky. Res. Found., Inc. v. Niadyne, Inc., No. Civ. 13-16-GFVT, 2013 WL 5943921, *10 (E.D. Ky. Nov. 5, 2013); SnoWizard, Inc. v. Andrews, No. Civ. A. 12-2796, 2013 WL 3728410, *6 (E.D. La. July 12, 2013); NematicITO, Inc. v. Spectrum Five LLC, No. 16-CV-01859-RS, 2016 WL 3167181, *4 (N.D. Cal. June 6, 2016).

Under the circumstances described in the discussion above, the record does not support UMB's assertion of "cause shown" to extend § 1446(b)(3)'s time limit for removal under § 1454(b)(2). UMB should have ascertained that Plaintiffs' claims may implicate the Copyright Act from the petition, but even if it not, UMB's interrogatory responses in September 2020 indicate

11

UMB's knowledge of the nature of Plaintiffs' claims. UMB's June 19, 2021 notice of removal is not timely through an extension for "cause shown" under § 1454(b)(2).[3]

Assuming § 1454(a) applies, the lack of "cause shown" to extend the 30-day time limit from ascertainment for removal is an independent basis to grant remand.

**B. Plaintiffs' claims are not removable.**

While Plaintiffs' motion to remand is properly granted because UMB's removal was not timely, the Court nonetheless considers whether Plaintiffs' claims are properly removable as within this Court's original subject matter jurisdiction.

Plaintiffs argue the Court should grant the motion to remand because there is no federal subject matter jurisdiction over Plaintiffs' claims. In opposition, UMB argues the motion to remand should be denied because Plaintiffs claims "arise under" federal law in at least three ways. First, UMB argues Plaintiffs' claims arise under federal law because resolution of Plaintiffs' claims requires construction of the Copyright Act. Second, UMB argue Plaintiffs' claims arise under federal law because Plaintiffs' state law claims, which require reference to the Copyright Act, trigger complete preemption and exclusive jurisdiction in federal court. Third, UMB argues

---

[3] Typically, removal under § 1454 relies on a defendant's counterclaim alleged under the Copyright Act, though "the assertion of a copyright claim by either plaintiff or defendant may serve as the basis for removal." Concordia Partners, LLC v. Pick, No. 2:14-CV-09-GZS, 2014 WL 4060253, *1 (D. Me. Aug. 14, 2014).

> Congress passed 28 U.S.C. § 1454 in response to the Supreme Court's decision in Holmes Group, Inc. v. Vornado Air Circulation Sys., 535 U.S. 826, 122 S. Ct. 1889, 153 L.Ed.2d 13 (2002), which held that a defendant's counterclaim under the Copyright Act could not serve as a basis for federal jurisdiction . . . . In response, Congress passed the so-called "*Holmes Group* fix" . . . .

Hanson v. Randall, Case No. 4:18-cv-04025, 2018 WL 1750510, at *3 (W.D. Ark. Apr. 11, 2018) (quoting Sleppin v. Thinkscan.com, LLC, 55 F. Supp. 3d 366, 377-78 (E.D.N.Y. 2014) (citing Andrews, 994 F. Supp. 2d at 731-32). Section 1454 provides a vehicle for a defendant to remove a case based on a federal counterclaim, in addition to removal based on the "well pleaded complaint rule," under which "a federal question must appear on the face of the plaintiff's complaint in order to create federal question jurisdiction." Johnson v. MFA Petroleum Co., 701 F.3d 243, 247 (8th Cir. 2012) (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)).

Plaintiffs' claims arise under federal law because they implicate significant federal issues under Gunn v. Minton, 568 U.S. 251, 257 (2013).

UMB's first two arguments for the existence of federal jurisdiction in this case rest on authority that is non-binding on this Court. Because the Court of Appeals for the Eighth Circuit has not held that (1) a state claim requiring reference the Copyright Act invokes federal jurisdiction in all instances; or (2) the Copyright Act triggers complete preemption, the Court declines to find federal jurisdiction on those bases here, especially in light of the general presumption in favor of remand.

Thus, the Court's analysis centers on UMB's third argument against remand – that Plaintiffs' claims, alleging breach of fiduciary duty under state law,[4] implicate significant federal issues, thus conferring federal subject matter jurisdiction under Gunn v. Minton, 568 U.S. 251, 257 (2013).

"Congress has authorized the federal district court to exercise original jurisdiction in 'all civil actions arising under the Constitution, laws, or treaties of the United States, 28 U.S.C. § 1331, and, more particularly, over 'any civil action arising under any Act of Congress relating to . . . [copyrights],' § 1338(a)." Gunn v. Minton, 568 U.S. 251, 257 (2013).

A case "aris[es] under" federal law if (1) the cause of action is created by federal law; or (2) the cause of action alleged under state law implicates significant federal issues. Id. at 258; Grable & Sons Metal Prods., Inc. v. Darue Elec. Eng'g & Mfg., 545 U.S. 308, 314 (2005)).

This second category is a "special and small category of cases in which arising under jurisdiction still lies." Gunn, 568 U.S. at 258 (citing Empire Healthchoice Assurance, Inc. v.

---

[4] A claim for breach of fiduciary duty requires the plaintiff to prove (1) existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) harm. Matter of Wilma G. James Trust, 487 S.W.3d 37, 48 (Mo. Ct. App. 2016).

McVeigh, 547 U.S. 677, 699 (2006)). This special and small category of cases includes "state-law claim[s which] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[.]" Gunn, 568 U.S. at 258 (quoting Grable, 545 U.S. at 314).

> That is, federal jurisdiction over a state claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

Id.[5]

UMB argues "this case easily satisfies the Gunn factors for removal of claims ostensibly pled under state law but that, like here, contain substantial federal issues." (Doc. #19-1). In opposition to UMB's assertion that the Gunn requirements are met, Plaintiffs argue only that the copyright issues implicated by their claims are not "substantial."

The relevant inquiry for "substantiality" is not whether the federal issue is important to the parties in the case, but rather whether the federal issue raised is important to the federal system as a whole. Gunn, 568 U.S. at 260 (citing Grable, 545 U.S. at 313) ("[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim necessarily raises a disputed federal issue, as Grable separately requires. The substantiality inquiry under Grable looks instead to the importance of the issue to the federal system as a whole.").

---

[5] More specifically, federal jurisdiction exists if any one of Plaintiffs' Counts II, III, or IV raise a federal issue that is necessarily raised, actually disputed, substantial, and amenable to resolution in federal court without disturbing the balance between state and federal courts because if one claim meets these requirements, the Court can exercise supplemental jurisdiction over the other two claims. 28 U.S.C. § 1367.

In support of UMB's argument that the federal issues presented in Plaintiffs' claims are substantial, UMB cites Vermont v. MPHJ Tech. Invs., LLC, 803 F.3d 635, 646 (Fed. Cir. 2015). The Vermont court found substantiality where the federal patent law issue presented in that case "ha[d] considerable significance beyond the current case," and would "clarify[] the rights and privileges afforded to patentees in pursuing patent infringement claims." 803 F.3d at 646.

UMB argues the copyright issues presented by Plaintiffs' claims for breach of fiduciary duty have potential for, similar to Vermont, broad impact on federal copyright law because "[r]esolution of the disputed statutory constructions in this case will affect countless works created under this statutory language providing guidance on what works were dedicated to the public and which are copyrighted and remain so for decades to come. This will also clarify the ownership of existing federal copyrights between an artist's family and the Trust estate in the face of Plaintiffs' position that conflicts with statutory law." (Doc. #19-1).

In contrast with Vermont though, even if resolution of Plaintiffs' claims requires an artwork-by-artwork assessment to see what copyrighted or copyrightable materials UMB had responsibility for as trustee and/or what those responsibilities were, whether certain property belonged to the Benton Trusts, or were works-for-hire, or were dedicated to the public, or were conveyed elsewhere, does not bear on the federal body of copyright law. Rather, these issues will bear on the amount or scope of harm allegedly incurred by Plaintiffs as a result of UMB's alleged conduct. Though the application of some aspects of the Copyright Act may be necessary to resolve Plaintiffs' claims, the proper categorization of copyrightable property implicates only to what extent UMB allegedly breached its fiduciary duties under Missouri law and the Benton Trusts documents. Even if the state court must determine under the Copyright Act what works were commissioned, designated to the public, and/or works for hire, Missouri's statutory requirements

15
Case 4:21-cv-00432-BCW   Document 43   Filed 09/20/21   Page 15 of 16

for trustees and the Benton Trusts documents will be ultimately dispositive of Plaintiffs' claims. The Court thus concludes the federal issues presented by Plaintiffs' claims are not substantial, the four Gunn requirements are not met, Plaintiffs' claims do not "arise under" federal law, and remand is required.

**C. Plaintiffs' motion for attorneys' fees is denied.**

Plaintiffs assert an award of attorneys' fees in connection with UMB's removal is warranted under the circumstances presented here. UMB opposes the request for fees arguing it had an objective basis for removal.

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

Under the circumstances presented here, the Court finds UMB had an objectively reasonable basis to remove the case, and the motion for fees under § 1447(c) is properly denied. Accordingly, it is hereby

ORDERED Plaintiffs' motion to remand (Doc. #13) is GRANTED. The Clerk of the Court is directed to take all necessary steps to remand this matter to the Circuit Court of Jackson County, Missouri.

IT IS SO ORDERED.

DATE: September 20, 2021 /s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT